**Application of PINKERTON et al.**

**Patent Appeal No. 5027.**

Court of Customs and Patent Appeals.
June 22, 1945.

Rehearing Denied June 26, 1945.

Pennie, Davis, Marvin & Edmonds, of New York City (Louis D. Forward, of New York City, and Clarence M. Fisher, of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

Appellants filed an application for a patent in the United States Patent Office alleging an improved process for the alkylation of olefins, particularly butylenes, by isobutane to produce isoparaffins, particularly iso-octane, of value for motor fuels. The Primary Examiner rejected all of the claims, 2, 3 and 4, as being anticipated by the patent to Holm et al., 2,245,038, June 10, 1941.

The claims read as follows:

"2. In the process of alkylating olefins with isoparaffins to produce motor fuel by bringing the olefins and isoparaffins into intimate contact in the presence of strong sulfuric acid, the step of subjecting the acid-hydrocarbon mixture to separation in stages, with separation of the major portion of the acid in the first stage.

"3. In the process of alkylating olefins with isoparaffins to produce motor fuel by bringing the olefins and isoparaffins into intimate contact in the presence of strong sulfuric acid, the step of subjecting the acid-hydrocarbon mixture to separation in stages, with separation of the major portion of the acid in the first stage, and returning acid separated in the first stage to the reaction zone.

"4. In the process of alkylating olefins with isoparaffins to produce motor fuel by bringing the olefins and isoparaffins into intimate contact in the presence of strong sulfuric acid, the steps of subjecting the acid-hydrocarbon mixture to two-stage gravity settling, with separation of the major portion of the acid from the hydrocarbon in the first stage, and return of the acid so separated to the reaction zone."

The decision of the examiner was affirmed by the Board of Appeals, from whose decision this appeal was taken.

The process of appellants provides for a reaction of isobutane with olefins in the presence of strong sulfuric acid, of a strength of from 92 to 98%. The reaction is produced by bringing the hydrocarbons into intimate contact with sulfuric acid, accompanied by agitation, in the reaction zone, from which the mixture is led into a settling tank in which the acid forms a lower layer while the hydrocarbons, which contain some acid not readily separable therefrom, forms a top layer. The upper layer is taken from the top of that tank and is led into the top of a second settling tank, where such acid as is with the hydrocarbons is separated. The acid is then withdrawn from the bottom, and the hydrocarbons from the top of said tank. The acid in the first tank is removed from the bottom thereof and passed back to the reaction zone with the addition of fresh acid, and the acid removed from the second tank is discarded after the operation, although a portion of it may be returned to the reaction zone. It is said that the separation in both tanks may be by gravity, or by centrifuge in the first and gravity in the second, or entirely by centrifuge.

The Holm et al. reference relates to a process for alkylating isoparaffins with olefins by means of a liquid acid catalyst, such as concentrated sulfuric acid, producing motor fuel of high anti-knock value. In the reference as in the process defined by the rejected claims the elements and reaction are identical. The reference discloses two tanks called separators. After mixing and agitating, the mixture passes into the first tank through the top thereof, which tank is called in the reference "a residual zone of reaction and initial separating chamber wherein the acid catalyst tends to separate by gravity from the hydrocarbon phase." From that tank hydrocarbons containing some dispersed acid are led through a hooded means and pipe into the top of a second tank or "final zone of separation." The hydrocarbons and acid are there separated by gravity, and the acid is drawn

from the bottom thereof while the hydrocarbons are collected through the top. The acid in the lower portion of the first tank, stated in the patent to be "a mixture of hydrocarbon and coarsely dispersed added catalyst," is led from the bottom of the tank, mixed with fresh reactant, and returned to the reaction mixer for the same circulation as has been here described. The acid collected in the second tank may be returned to the reaction zone or discharged from the system.

Appellants contend in their brief that they made two discoveries: One, that in the mixture there is always present a large proportion of the acid which separates quickly from the hydrocarbons and a smaller proportion which separates with greater difficulty and more slowly; two, that the agents tending to act as emulsifiers appear to concentrate in the relatively small portion of acid which does not separate quickly from the hydrocarbons, and are present only to an insignificant extent in the acid which separates quickly from the hydrocarbons. Appellants say that those alleged discoveries led to the two-stage separation described in the application.

Appellants admit in their application that processes for alkylation of olefins, such as butylene, by isobutane in the presence of strong sulfuric acid are old, but claim invention based upon their alleged discoveries.

It will be noted that in the process of the reference separated acid is withdrawn from the bottom of the first settling tank and returned to the reaction zone. This is also done in the process of appellants. The patentees state that the passage of the reaction mixture may be regulated in the first tank by adjusting the relative rates of hydrocarbon removal from the top thereof and hydrocarbon and acid removal through the bottom, and that it is possible by such regulation to keep the acid content in the hydrocarbon stream at usually not over a few percent while the acid content of the mixture coming from the bottom of the tank may be of the order of from 50 to 60%. We are satisfied that separation occurs in the process of the Holm et al. patent in stages, with separation of the major portion of the acid in the first stage. Since the hydrocarbon mixture leaving the first tank contains "not over a few percent" of acid, it is evident that the major portion of the acid must have been separated from the hydrocarbons and this we think fully satisfies the requirements of all of the appealed claims.

For the reason that the acid substance coming from the bottom of the first tank of the reference may contain more hydrocarbons than the acid substance coming from the first tank in appellants' process, appellants conclude that this difference renders their claims patentable. If the claims defined the major part of the acid so separated as free acid the situation would be different, but all that is required in the claims is that in the first stage there shall be a separation of the major part of the acid from hydrocarbons.

The principal object of the involved invention is to produce alkylated olefins as a final product. The process of the reference produces such final product by separation in stages.

We can see no patentable distinction between the process of the patent to Holm et al. and that of the rejected claims, and therefore the decision of the Board of Appeals is affirmed.

Affirmed.